IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHITINA WILLIAMS,<br>for her minor child, A.W.,<br><br>              Claimant,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>              Respondent. | No. 14-cv-2172<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chitina Williams brings this action for her minor child A.W. ("Claimant") under 42 U.S.C. § 405(g) against Respondent Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), seeking review of the Commissioner's decision denying Claimant's application for supplemental security income ("SSI") under § 1614(a)(3)(c) of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 10.]

Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 15.] The Commissioner also has moved for summary judgment. [ECF No. 22]. For the reasons stated below, Claimant's motion for summary is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

# I. PROCEDURAL HISTORY

On June 28, 2011, Plaintiff filed an application for SSI on behalf of Claimant, alleging an onset date of July 30, 2002. (R. 112). The Social Security Administration denied the claim initially on October 7, 2011, and on reconsideration on January 26, 2012. (R. 58, 66.) In less than a week, Claimant requested an administrative hearing. (R. 67.) An Administrative Law Judge (the "ALJ") held the hearing on October 2, 2012. (R. 37.) At that hearing, Claimant, who was represented by counsel, appeared and testified. (R. 37, 41.) Chitina Williams, Claimant's mother, also appeared and testified. (R. 37, 45.)

On October 18, 2012, the ALJ issued a written decision. (R. 16-31.) In the decision, the ALJ went through the three-step sequential evaluation process and ultimately found Claimant not disabled under the Social Security Act. (R. 31.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since the application date. (R. 19.) At step two, the ALJ found that Claimant had the severe impairments of attention deficit hyperactivity disorder and Bipolar Disorder. *Id.* At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, 416.926). (R. 19, 20.) During step three, the ALJ analyzed Claimant's functioning in each of the six domains. The ALJ found that Claimant had a marked limitation in interacting and relating with others. (R. 28.) The ALJ found that Claimant had a less than marked limitation in (1) acquiring and using information, and (2) attending and completing tasks. (R. 26, 27.) Finally, the ALJ found that Claimant had no limitation in (1) moving about and manipulating objects, (2) caring for himself, and (3) health and physical well-being. (R. 29, 30, 31.)

2

Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 31.) On October 18, 2012, Claimant sought review of the ALJ's decision. *See* R. 1. On January 27, 2014, the Social Security Appeals Council denied the request. *Id.* That denial made the ALJ's opinion into the final decision of the Commissioner. *Id. See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is

3

deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

Claimant asserts that there are two problems with the ALJ's decision. First, the ALJ ignored evidence that Claimant had a marked limitation in the caring for yourself domain. Second, the ALJ conducted an improper credibility analysis. Because the ALJ committed the first error, the Court need not address the second.

"A child's impairments will functionally equal a listing if they result in either a 'marked' limitation in at least two of six enumerated domains of functioning, or an 'extreme' limitation in at least one." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a). Those six domains are: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Jelinek v. Astrue*, 662 F.3d 805, 810 n.2 (7th Cir. 2011) (citing 20 C.F.R. § 416.926a(b)(1)). To be marked, a limitation must "interfere[] 'seriously' with a child's ability to initiate, sustain, or complete activities in the domain . . . ." *Buckhanon*, 368 F. App'x at 679 (citing 20 C.F.R. § 416.926a(e)2).

In this case, the ALJ found that Claimant had a marked limitation in interacting and relating with others. (R. 28.) If Claimant had a marked limitation in any of the other five

4

domains, he would have been disabled. But the ALJ determined that Claimant had less than a marked limitation in all other domains. In the caring for yourself domain, the ALJ found that Claimant had no limitation. (R. 30.)

The caring for yourself domain is about how well a claimant maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways; how he copes with stress and changes in his environment; and whether he takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The Social Security Regulations provide different descriptions of what a school-age child (ages six to twelve) and an adolescent (ages twelve to eighteen) should be able to do. During the relevant time period for this case, A.W. fell into both of these age groupings. According to the regulations, a school-age child should (among other things): (1) start demonstrating consistent control over his behavior, (2) avoid behaviors that are unsafe or otherwise not good for him, (3) start to develop an understanding of what is right and wrong and what is acceptable and unacceptable behavior, (4) identify when he feels good and bad about himself, and (5) start to recognize what he is competent in doing and what he has difficulty doing. 20 C.F.R. § 416.926a(k)(2)(iv). The regulations also specify that an adolescent should "begin to discover appropriate ways to express [his] feelings, both good and bad . . . ." 20 C.F.R. § 416.926a(k)(2)(v).

The ALJ's entire analysis of the caring for yourself domain is as follows: "<u>The claimant has no limitation in the ability to care for himself.</u> The claimant did not appear to have a limitation in this domain. For example, the claimant's mother testified that the claimant pursues activities such as caring for animals, which the claimant enjoys, and watching and playing baseball." (R. 30) (underlining original). That is it. The ALJ summarized a tremendous amount

5

of evidence relevant to this domain elsewhere in the opinion. But the ALJ failed to provide any analysis of how this evidence impacted Claimant's limitation in the caring for yourself domain.

Here is some of the evidence mentioned by the ALJ but not considered in the caring for yourself analysis. Claimant has "a history of behavioral problems." (R. 20.) Claimant's mother testified that he had "difficulty with aggression and impulsiveness." (R. 21.) She gave specific examples. Claimant "routinely gets into fights," he kicked out a window on the church bus, and he tried to stab his brother. *Id.* Many of these descriptions are supported by Claimant's school records which show that Claimant cursed at his teachers, fought with students, and tore a fire alarm off of the wall. (R. 22.) Claimant often was suspended from school and was told at least twice not to return to school without a parent. *Id.* Claimant's individualized educational plan stated that he acted defiantly towards adults and became defensive when told what to do, often quickly escalating such situations. *Id.* One of Claimant's teachers, Telly Safford, stated that Claimant was quick to anger and violence, did not appreciate discipline, and would become upset with those who were displeased with him. *Id.* In fact, she even said that other children were afraid of Claimant. *Id.* Likewise, another teacher, Lolita Tate, explained that Claimant exploded in anger when he did not get his way. *Id.* And Claimant's seventh grade teacher reported that he would become angry if there was any insistence, leading him to storm out of class and disregard any previous agreements about his behavior. (R. 24.) In fact, when Claimant got angry, there normally would be an outburst or a fight. *Id.* Of greatest concern, Claimant threw a chair at a security guard and threatened to kill a teacher. (R. 23.) The latter led to him being admitted to Hartgrove Hospital for six days. *Id.* Doctor Mark Langgut, who performed a psychological consultative examination of Claimant, determined that Claimant's anger and impulsivity could overwhelm his best intentions. *Id.*

6

Again, all of this evidence was described by the ALJ at the beginning of the opinion. But the ALJ ignored all of this evidence when discussing the caring for yourself domain. Indisputably, this evidence is relevant to whether Claimant got his physical and emotional wants and needs met in appropriate ways, and coped with stress and changes in his environment. 20 C.F.R. § 416.926a(k). More specifically, this evidence strongly indicates that Claimant had not started to demonstrate consistent control over his behavior, was unable to avoid unsafe and bad behavior, and had not discovered appropriate ways to express his feelings. 20 C.F.R. §§ 416.926a(k)(2)(iv), (v). The ALJ should have analyzed how this evidence related to Claimant's ability to care for himself. *See Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007).

The Commissioner tries to defend the ALJ's decision. She explains that Dr. Donna Hudspeth, a state agency consultant, opined that Claimant did not suffer from any limitation in the caring for yourself domain and that the ALJ gave this opinion great weight. (R. 24, 196.) The Commissioner also recites some of Dr. Langutt's findings regarding Claimant's academic abilities, care for pets, and ability to do chores and homework. And, finally, the Commissioner notes that Dr. Johnny Williamson found that Claimant improved during his time at Hartgrove after he threatened to kill his teacher. The Commissioner contends that these facts prove that the ALJ's decision was supported by substantial evidence.

There are two straight-forward legal problems with this argument. Although the ALJ mentioned the evidence cited by the Commissioner, the ALJ did not reference most of the evidence – or even the early discussion of it – when addressing the caring for yourself domain. (R. 30.) The ALJ's only grounds for the no limitation determination were that Claimant cared for animals and watched and played baseball. Therefore, the *Chenery* doctrine may preclude the Commissioner from relying on the additional evidence that she identified in her brief with

7

respect to this domain. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). Also, an ALJ must build a logical bridge from the evidence to the conclusion. *Berger*, 516 F.3d at 544. Here, the ALJ clearly failed to fulfill this obligation. *Giles*, 483 F.3d at 486. A summary of facts followed by two sentences which reference just a few of those facts – and relatively unimportant ones at that – does not constitute analysis sufficient to connect the dots.

Moreover, there are problems with the evidence upon which the Commissioner relies. Dr. Hudspeth provided no explanation for her determination in the caring for yourself domain, even though she provided explanations for other domains. (R. 196.) More significantly, the ALJ credited Dr. Hudspeth in part because she "had the opportunity to review the medical evidence in the record." (R. 24.) But Claimant has asserted that Dr. Hudspeth did not have access to important parts of the record, including a lengthy report from one of Claimant's teachers, all of Claimant's 2012 treatment records, and all of his records from Hartgrove. [ECF No. 15, at 14.] The Commissioner has not disputed this contention. Also, many of Dr. Langutt's findings – such as those related to Claimant's ability to do calculations or care for pets – are not inconsistent with the evidence of Claimant's problems discussed above. Finally, while Claimant may have improved during his hospital stay, many of the problems that he had before that stay then returned after he left. Further, Claimant's condition after his hospital stay is but a snapshot in time. For these reasons, it is not clear that this evidence would satisfy the substantial evidence standard. The Court need not reach that issue, though, because the ALJ's failure to build a logical bridge merits remand.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 1, 2016